UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:16-cv-2310-SDM-TBM
    8:03-cr-393-SDM-TBM

SANTONIO SIMMONS
_____/

# ORDER

Simmons moves under 28 U.S.C. § 2255 to vacate and challenges his convictions (1) for forcible assault of a law enforcement officer with an increased sentence because he possessed a firearm, as prohibited under 18 U.S.C. §111(a)(1) and (b); and (2) for possessing of a firearm in furtherance of a crime of violence, as prohibited under 18 U.S.C. § 924(c)(1)(A)(i). Simmons was sentenced to imprisonment for thirty-seven months for the forcible assault and a consecutive term of one-hundred-eighty months for the firearm conviction. (Doc. 156) Both the convictions and sentences accord with the plea agreement. Simmons filed no appeal.

**Background:**

In an earlier action, 8:05-cv-2318-SDM-TBM, Simmons moved under Section 2255, which motion was denied on the merits. (Docs. 181 and 204) Several years later Simmons received the benefit of the United States' motion under Rule 35, Federal Rules of Criminal Procedure, to reduce sentence. (Docs. 210 and 214) And after a

couple of additional years, Simmons's supervised release was revoked and he was sentenced to forty-six months' imprisonment.[1] (Doc. 244)

The circuit court granted Simmons permission to file the present action, a second or successive motion under Section 2255.[2] (Doc. 267) Under the terms of the plea agreement (Doc. 76 at 1), Simmons (1) admitted to "forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a Hillsborough County Sheriff's Office Detective . . . while she was engaged in and on account of the performance of her official duties, in violation of 18 U.S.C. §§ 111 (a)(1) and (b)," and (2) admitted to committing that offense while "possess[ing] a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1 )(A) and 924(c)(1 )(A)(i)." Further, Simmons admitted to the following facts (Doc. 76 at 15–16):

> In early June 2003, a confidential informant introduced an undercover agent ("UC") to Kareem Desseau. The UC and Desseau immediately began negotiating crack cocaine transactions[, and after completing four cocaine sales,] Desseau contacted the UC and inquired whether she would be interested in purchasing 10 ounces of crack cocaine for $9,000. The UC agreed to meet with Desseau and purchase 10 ounces of crack cocaine. After a number of location changes by Desseau, he agreed to meet the UC at the University Mall. Thus, the UC traveled to meet Desseau at the University Mall and law enforcement established surveillance at the mall.
>
> Desseau arrived at the University Mall in a car occupied by Santonio Simmons and Delvaughan Johnson. Desseau was driving the car, Simmons was in the front passenger seat, and

---

[1] Although Simmons has completed his sentences, this action is not rendered moot because of the potential "collateral consequences" of his conviction under Section 924(c). *See U.S. ex rel. Graham v. U.S. Parole Comm'n*, 732 F.2d 849, 850 (11th Cir. 1984).

[2] Earlier orders (Docs. 13 and 15) stayed this action to await the conclusion of *McKinley v. United States*, 698 F. App'x 597 (11th Cir. 2017), and *Ovalles v. United States*, 861 F.3d 1257, 1263–65 (11th Cir. 2017).

> Johnson was in the back seat. Surveillance observed Desseau exit the car and Johnson get into the driver's seat. Desseau then obtained a white bag out of the trunk of the car and walked over and entered the UC's car. Soon thereafter, Johnson drove the car over to the UC's car and Simmons jumped out and pointed a Ruger 9mm Pistol Model P95DC, Serial Number 312-47586 at the UC through the passenger window. Simmons yelled at the UC and demanded that she give him all her money. The takedown team quickly converged on the defendants and arrested them. Post-*Miranda*, Simmons stated that Desseau wanted Simmons and Johnson to assist him in staging a robbery of the UC and Desseau for the $9,000. Further, Simmons stated that he, Desseau, and Johnson talked extensively on how they were going to do the robbery.

**Present Motion to Vacate:**

Simmons challenges the validity of the firearm conviction under Section 924(c)(1)(A), which prohibits the use of a firearm in furtherance of a crime of violence, and he contends that the underlying conviction for assaulting a law enforcement officer under Section 111 is not a crime of violence. When he filed this action, this issue was unsettled, but no longer. In a case of first impression, the Eleventh Circuit Court of Appeals joined five other circuits to "hold that a violation of § 111(b) qualifies as a crime of violence." *United States v. Bates*, 960 F.3d 1278, 1285 (11th Cir. 2020). *See United States v. Taylor*, 848 F.3d 476, 491–95 (1st Cir. 2017); *United States v. Rafidi*, 829 F.3d 437, 446 (6th Cir. 2016); *United States v. Hernandez–Hernandez*, 817 F.3d 207, 214–17 (5th Cir. 2016); *United States v. Juvenile Female*, 566 F.3d 943, 947–48 (9th Cir. 2009); *United States v. Kendall*, 876 F.3d 1264, 1270 (10th Cir. 2017). Simmons's underlying conviction under Section 111(a) and the enhanced penalty provision in Section 111(b) qualifies as a crime of violence, as *Bates*, 960 F.3d at 1286, explains:

> The enhanced penalty provision requires the government to prove that the defendant committed an act described in § 111(a) and, in doing so, the defendant either: 1) used a deadly/dangerous weapon or 2) inflicted bodily injury. *See id.* at 1296–97; 18 U.S.C. § 111(b). Each prong of § 111(b) transforms a § 111(a) act into a crime of violence.

Simmons admitted to pointing a pistol at the undercover officer and demanding that she give him all her money. This was a forcible assault on a law enforcement officer using a deadly weapon, which act is a crime of violence that supports the firearm conviction under Section 924(c)(1). *See Bates*, 960 F.3d at 1287 (agreeing with *United States v. Rafidi*, 829 F.3d 437, 446 (6th Cir. 2016), that "[t]he *use* of a deadly weapon under § 111(b) transforms a § 111(a) act into a crime of violence"). (The undercover officer, a seasoned and veteran officer, testified compellingly and harrowingly at trial that she thought her death was imminent and that had she not struggled a moment with Simmons and had not an incoming officer injured himself by heroically colliding with Simmons on the run and injuring himself in the collision, Simmons would have killed her; the presiding judge agreed then and agrees now.)

The motion to vacate (Doc. 1) is **DENIED**. The clerk must enter a judgment for the United States and **CLOSE** this case.

### DENIAL OF BOTH CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Simmons is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no entitlement to appeal a district court's denial of his

motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Simmons must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate the merits of the claims, Simmons is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Simmons must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on July 1, 2024.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE